IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| UNITED STATES OF AMERICA, | |
|---|---|
| **Plaintiff**, | |
| v. | **Criminal No.** 18-066 (FAB) |
| MAXIMILIANO FÍGARO-BENJAMÍN [1], *et al.*, | |
| **Defendants**. | |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is defendants Maximiliano Fígaro-Benjamín, Emiliano Fígaro-Benjamín, Katerin Martínez-Albreto ("Martínez"), and Alexandria Andino-Rodríguez ("Andino") (collectively "defendants")'s motion to continue trial. (Docket Nos. 294, 304, 305, 306 & 313.) Also before the Court are two motions *in limine*. (Docket Nos. 310 & 311.) First, the United States seeks to admit business records pursuant to Federal Rules of Evidence 803(6) and 902. (Docket No. 310.) Second, the United States moves to preclude self-serving statements pursuant to Federal Rule of Evidence 802. (Docket No. 311.) For the reasons set forth below, the defendants' motion to continue trial is **DENIED**. (Docket Nos. 294, 304, 305, 306 & 313.) The United States' motion *in limine* to preclude self-serving statements is **GRANTED**, subject to the conditions set forth in this Opinion and Order. (Docket No. 311.)

The United States' motion *in limine* to admit business records is **DENIED WITHOUT PREJUDICE**. (Docket No. 310.)

## I. Background

This action concerns the alleged importation of cocaine from St. Thomas, U.S. Virgin Islands, to Puerto Rico. Federal Bureau of Investigation ("FBI") special agent Joel Cruz ("Cruz") prepared an affidavit in support of the criminal complaint. (Docket No. 1, Ex. 1.) The following allegations derive from special agent Cruz's affidavit.

The FBI received information regarding the transportation of cocaine from St. Thomas to Puerto Rico onboard a vessel named "Black Wolfpack." Id. at p. 2. On January 27, 2018, Customs and Border Patrol ("CBP") agents observed the Black Wolfpack at the Crown Bay Marina in St. Thomas. Id. The defendants purportedly placed coolers, a cardboard box, and other items inside the vessel. Id. The vessel departed from the marina and proceeded westbound towards Puerto Rico. Id. Approximately an hour later, the CBP agents located the Black Wolfpack near Culebra. Id. The vessel returned to St. Thomas, however, because of poor weather conditions. Id. After the vessel returned to the Crown Bay Marina, Maximiliano Fígaro-Benjamín identified himself as the captain. Id. at p. 3. CBP and Homeland Security Investigations ("HSI") agents conducted a search of the vessel, recovering

approximately 65 kilograms of cocaine.  Id.  The agents arrested the defendants on January 29, 2018.  (Docket Nos. 2 & 14.)

On February 1, 2018, a grand jury returned a two-count indictment charging Maximiliano Fígaro-Benjamín, Emiliano Fígaro-Benjamín, Martínez, and Andino with conspiring to possess with intent to distribute at least five kilograms of cocaine in violation of 21 U.S.C. sections 846, 841(a)(1) and 841(b)(1)(A) (count one), and conspiring to import a controlled substance into the United States in violation of 21 U.S.C. sections 952(a), 960(a)(1) and (b)(1)(B) (count two).  (Docket No. 8.) Subsequently, a grand jury returned a superseding indictment. (Docket No. 123.)  The superseding indictment named two additional defendants, Bernardo Coplin-Benjamín ("Coplin") and José Resto-Miranda ("Resto").  Id.  Coplin and Resto pled guilty on August 5, 2019 and August 12, 2019, respectively.  (Docket Nos. 277 & 299).

**II. The Defendants' Motion to Continue Trial**

Eleven days before the commencement of trial, the United States filed an informative motion regarding its intention to seek a second superseding indictment.  (Docket No. 294.)  A grand jury returned a second superseding indictment on August 14, 2019. (Docket No. 316.)  The defendants invoke the Speedy Trial Act ("STA"), contending that the second superseding indictment

requires the Court to continue trial. Docket No. 304 at p. 3 (citing 18 U.S.C. § 3161). The Speedy Trial Act provides that:

> Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel.

18 U.S.C. § 3161(c)(2); see United States v. Hood, 469 F.3d 7, 9 (1st Cir. 2006) ("The speedy trial clock begins ticking on the day a defendant first appears in court.").

The grand jury returned the original indictment on February 1, 2018. (Docket No. 8.) Maximiliano Fígaro-Benjamín, Emiliano Fígaro-Benjamín, Andino, and Martínez appeared before Magistrate Judge Silvia Carreño-Coll on February 6, 2018 for the initial appearance. (Docket No. 14.) Accordingly, trial cannot commence before March 4, 2018. 18 U.S.C. § 3161(c)(2). Trial is set for August 20, 2019, more than a year after the initial appearance. (Docket No. 284.)

The defendants contend that the second superseding indictment resets the thirty-day trial clock. (Docket No. 304 at p. 3.) The STA does not, however, "require that the 30-day trial preparation period be restarted upon the filing of a superseding indictment." United States v. Rojas-Contreras, 474 U.S. 231, 236 (1985); United States v. Richardson, 537 F.3d 951, 958 (8th Cir. 2008) (holding that the district court did not abuse its discretion

in commencing trial the same day the grand jury returned the superseding indictment); see, e.g., United States v. Santiago-Becerill, 130 F.3d 11, 19 (1st Cir. 1997) ("The October 18, 1995 superseding indictment, which included Ramos and Esquilin as defendants along with Santiago, did not restart Santiago's STA's clock because it was based on the original charges.") (citation omitted).  The Court may continue trial, however, to serve the ends of justice pursuant to 18 U.S.C. section 3161(h)(3).  Rojas-Contreras, 474 U.S. at 236.  The STA delineates factors "a court shall consider in considering an ends of justice continuance, such as whether a failure to grant the continuance would unreasonably deny the defendant . . . continuity of counsel" or reasonable time for effective preparation. United States v. Pakala, 568 F.3d 47, 58 (1st Cir. 2009) (internal quotation omitted) (citing 18 U.S.C. § 3161(h)(7)(B)).

The defendants assert that the second superseding indictment contains "substantive amendments [that] will have practical effects in terms of standards of admissibility of evidence and trial strategy." (Docket No. 304 at p. 2.)  The second superseding indictment differs from the superseding indictment in two respects: (1) the timeframe of the alleged conspiracy and (2) the allegations set forth in count two.

### A. Timeframe of the Conspiracy

The grand jury narrowed the scope of the conspiracy. The superseding indictment alleges that the conspiracy began before January 27, 2018. (Docket No. 123 at p. 1.) This timeframe encompasses any act occurring before the CBP agents stopped and searched the Black Wolfpack. The second superseding indictment alleges, however, that the conspiracy began no later than 2017. (Docket No. 316.)[1] Accordingly, acts that occurred before 2017 would fall within the scope of the superseding indictment, but not the second superseding indictment.

### B. Allegations Set Forth in Count Two

Count two charges Maximiliano Fígaro-Benjamín, Emiliano Fígaro-Benjamín, Martínez, and Andino with violating 21 U.S.C. section 952 ("section 952"). (Docket No. 316 at p. 2.) Pursuant to section 952, "[it] shall be unlawful to import [controlled substances] into the customs territory of the United States from any place outside thereof but within the United States." 21 U.S.C. § 952(a). The "customs territory" of the United States includes the States, the District of Columbia, and Puerto Rico. 21 U.S.C.

---

[1] The defendants aver that "the start of the conspiracy will be changed from January 27, 2018 to early 2017." (Docket No. 304 at p. 2.) This conclusion is incorrect. Compare Docket No. 123, Superseding Indictment ("Beginning on a date unknown, but no later than on or about January 27, 2018") with Docket No. 316, Second Superseding Indictment ("Beginning on a date unknown, but not later than 2017, and continuing until a date unknown but not earlier than January 27, 2018"). The defendants conflate the start and end of the alleged conspiracy.

§ 951(a)(2); see Harmonized Tariff Schedule of the United States, n.2. Consequently, section 952 "proscribes importation from any other U.S. territory not within the customs territory (*e.g.* U.S. Virgin Islands, Guam) into the States, the District of Columbia, and Puerto Rico." United States v. Ramírez-Ferrer, 82 F.3d 1131, 1138 (1st Cir. 1996) (internal quotation omitted).

Although both indictments cite section 952, the allegations regarding importation differ slightly. The superseding indictment alleges that the defendants imported cocaine "into the United States from a place outside thereof." (Docket No. 123 at p. 2.) The second superseding indictment alleges that the defendants imported cocaine "into the customs territory of the United States from any place outside thereof, but within the United States." (Docket No. 316 at p. 2.) Accordingly, the second superseding indictment is more precise and eliminates potential confusion.

**C. A Continuance is Unwarranted**

The defendants ground their motion to continue trial on a false premise: that the second superseding indictment contains a "substantive amendment." (Docket No. 304 at p. 3.) The Court disagrees. The changes set forth in the second superseding indictment are minor. The defendants and number of counts are identical. Maximiliano Fígaro-Benjamín, Emiliano Fígaro-Benjamín, Martínez, and Andino received notice regarding the alleged

importation of cocaine from St. Thomas to Puerto Rico no later than February 26, 2018, the day of their initial appearance. (Docket No. 14.)  The complaint and special agent Cruz's affidavit are public documents.  (Docket No. 1.)  Rather than prejudice the defendants, the second superseding indictment limits the timeframe of the conspiracy, restricting the scope of potentially relevant evidence.  (Docket Nos. 123 & 316.)  The United States is precluded from asserting that acts predating 2017 were performed in furtherance of the conspiracy.  This limitation is an advantage to the defense. Counsel has had ample time to prepare for trial. Accordingly, the defendants' motion to continue trial is **DENIED**. (Docket Nos. 294, 304, 305, 306 & 313.)

### III.  Motion *in Limine* to Preclude Self-Serving Statements

FBI agents interviewed Maximiliano Fígaro-Benjamín, Emiliano Fígaro-Benjamín, and Andino on August 29, 2019 in St. Thomas.  (Docket No. 311 at p. 1.)[2]  "One of these defendants made a mix of inculpatory and self-serving statements."  Id.  The United States moves to preclude self-serving statements at trial.  Id.

Federal Rule of Evidence 801 prohibits hearsay. Fed. R. Evid. 801. Hearsay is an out-of-court statement offered "in evidence to prove the truth of the matter asserted in the statement." Fed. R.

---

[2] The agents did not interview Martínez.  (Docket No. 311 at p. 1.)

Evid. 801(c).  The Federal Rules of Evidence set forth exceptions to the hearsay prohibition.  See, e.g., Fed. R. Evid. 801(d)(2) (an opposing party's statement).  There is no exception, however, for self-serving hearsay.  See United States v. Rivera-Hernández, 497 F.3d 71, 82 n.5 (1st Cir. 2007) (internal citation omitted) ("To be received in evidence an admission . . . must be contrary to that party's position at the time of the trial."); United States v. Palow, 777 F.2d 52, 56 (1st Cir. 1985) (holding that Rule 801(d)(2)(A) was "designed to exclude the introduction of self-serving statements by the party making them"). Accordingly, the defendants are prohibited from eliciting self-serving out-of-court statements.

Maximiliano Fígaro-Benjamín argues that separating inculpatory admissions from self-serving statements contravenes Federal Rule of Evidence 106 ("Rule 106").  Rule 106 provides that:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time.

Fed. R. Evid. 106.[3]  This Rule does not, however, "compel admission of otherwise inadmissible hearsay evidence." United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (quoting Phoenix

---

[3] Maximiliano Fígaro-Benjamín cites the common-law rule of completeness. (Docket No. 318 at p. 3.)  The Federal Rules of Evidence govern the Court's analysis, however, not the common law.

Associates III v. Stone, 60 F.3d 95, 103 (2d Cir. 1995). The defendant's self-serving declarations are precluded, and shall be redacted from post-arrest interview evidence. Consequently, the United States' motion *in limine* regarding self-serving statements is **GRANTED**. (Docket No. 311.)

**IV. Motion *in Limine* to Admit Business Records**

The United States moves to admit business records from the Crown Bay Marina. (Docket No. 310 at p. 3.) The records include license agreements for docking the Black Wolfpack in St. Thomas. Id. Federal Rule of Evidence 803 sets forth a hearsay exception for records "kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit." Fed. R. Evid. 803(6)(B). Relatedly, Federal Rule of Evidence 902 ("Rule 902") provides that certified domestic records of a regularly conducted activity are self-authenticating, subject to certain criteria. Fed. R. Evid. 902(11). Pursuant to Rule 902, the United States must submit a certification from a custodian or qualified person demonstrating that the records comply with Federal Rule of Evidence 803(6). Id. The United States must provide the defendants with advance notice of its intent to offer the records at trial. Id. The Court holds that the United States' motion *in limine* constitutes sufficient notice. The United States failed to attach, however, the certification

from the custodian of the Crown Bay Marina records.  (Docket No. 310.)  Accordingly, the United States' motion *in limine* to admit the Crown Bay Marina license agreements as self-authenticating business records is **DENIED WITHOUT PREJUDICE**.  Id.  The United States shall present the certification to the Court and defense counsel at trial.

## V.  Conclusion

For the reasons set forth above, the defendants' motion to continue trial is **DENIED**.  (Docket Nos. 294, 304, 305, 306 & 313.)  The United States' motion *in limine* to preclude self-serving statements is **GRANTED,** subject to the conditions set forth in this Opinion and Order.  (Docket No. 311.)  The United States' motion *in limine* to admit business records is **DENIED WITHOUT PREJUDICE**. (Docket No. 310.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 16, 2019.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE
